FILED
2013 Dec-31  PM 04:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NOTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CYNTHIA SHARPE, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO. |
| | ) | |
| HOMEWARD RESIDENTIAL, INC. | ) | |
| AND | ) | |
| OCWEN LOAN SERVICING, LLC | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## COMPLAINT AND JURY TRIAL DEMAND

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), and out of state law violations.

3. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4. Plaintiff, Cynthia Sharpe, is a natural person who resides in Jefferson County, Alabama, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5.    Defendant, Homeward Residential, LLC, (hereinafter referred to as "Homeward") is an entity engaged in servicing residential mortgage loans that are in default when the servicing rights are acquired.  Homeward engages in this business in the State of Alabama, but maintains a principal place of business in some state other than the State of Alabama. Homeward is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

6.    Defendant, Ocwen Loan Servicing, LLC, (hereinafter referred to as "Ocwen") is an entity engaged in servicing residential mortgage loans that are in default when the servicing rights are acquired.  Ocwen engages in this business in the State of Alabama, but maintains a principal place of business in some state other than the State of Alabama. Ocwen is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

7.    Plaintiff and/or her spouse, Preston Sharpe, allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

8.    The alleged debt at issue is related to a residential mortgage with Deutsche Bank National Trust Company, as Trustee for Argent Securities, Inc., Asset Backed Pass-Through Certificates, Series 2003-W5 ("Deutsche Bank National Trust Company").

2-

9.      This debt has be sold, transferred, and/or assigned to various companies for servicing and collection.

10.     Upon information and belief, the debt was originally serviced by Citi Residential Lending ("Citi").

11.     Upon information and belief, the debt was sold, transferred and/or assigned to American Home Mortgage Servicing ("AHMSI") for servicing and collections.

12.     Upon information and belief, AHMSI sold, transferred and/or assigned the debt to Homeward for servicing and collections.

13.     Upon information and belief, Homeward sold, transferred and/or assigned the debt to Ocwen for servicing and collections.

14.     Up until August 2007, the Plaintiff and her spouse were able to pay their bills. In August 2007, the Plaintiff's spouse passed away.

15.     Without the Plaintiff's spouse's income, the Plaintiff had difficulty maintaining the mortgage, her vehicle payments, and other credit obligations. Therefore, the Plaintiff turned for help and sought protection under Chapter 13 of the Bankruptcy Code.

16.     On October 23, 2008, the Plaintiff filed a Chapter 13 petition, (Case # 05-292-TBB). At that time, her mortgage was being serviced by Citi Residential Lending. The mortgage was in default, and the Plaintiff sought to restructure the mortgage arrears in her bankruptcy plan.

17.  Sometime after October 23, 2008, the mortgage debt was transferred to American Home Mortgage Servicing ("AHMSI") for servicing. The debt was in default when AHMSI began servicing this debt.

18.  On September 2, 2009, the Plaintiff elected to convert her Chapter 13 case to a Chapter 7.

19.  On September 14, 2009, AHMSI filed a Motion for Relief from the Automatic Stay. The Motion for Relief alleged the Plaintiff was in pre-petition and post-petition default. On October 8, 2009, the Court granted AHMSI's Motion for Relief from the Automatic Stay.

20.  According to the Statement of Intentions filed by the Plaintiff in the Chapter 7 Bankruptcy case, the Plaintiff surrendered her interest in the property to AHMSI.

21.  No entity objected to the discharge-ability of the debt.

22.  On December 03, 2009, the Bankruptcy Court issued an Order discharging the debt.

23.  The Discharge Order was sent to Citi and AHMSI.

24.  The Discharge Order states in relevant part: "IT IS ORDERED: The Plaintiff is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code)."

25.  After the bankruptcy discharge was entered, the Plaintiff began making some voluntary monthly payments to AHMSI.

**AHMSI Collection Efforts**

26.  After the Plaintiff stopped making voluntary monthly payments, AHMSI began contacting Plaintiff by phone and by mail demanding payments on this discharged debt.

27.  On or around January 17, 2012, AHMSI sent a notice to the Plaintiff that the loan was in default.

28.  In the spring of 2012, the Plaintiff moved out of the residence which secured the debt and moved into an apartment. Plaintiff could no longer afford the mortgage payments.

29.  Since the Plaintiff continued to receive multiple demands for payment from AHMSI, Plaintiff felt like she still owed this debt. These collection efforts began to take a toll on the Plaintiff and the pressure was mounting. Plaintiff thought that if she transferred the real property out of her name, that the collection efforts would stop.

30.  On March 27, 2012, Plaintiff decided to quitclaim the real property, which is the subject to the debt, to Greg and Carla Fields. The Plaintiff and the Field's had an agreement that the Fields would make the mortgage payment direct. The Plaintiff notified AHMSI that the Fields had taken possession of the property and were going to make the mortgage payments direct.

31.   In a letter dated April 12, 2012, Plaintiff gave written authorization for AHMSI to discuss all aspects of the debt with the Fields.

32.   Plaintiff received a letter from AHMSI dated May 21, 2012, acknowledging that they received the authorization to discuss the debt with the Fields.

33.   Sometime thereafter, AHMSI transfers the debt to Homeward Residential, Inc., for servicing of this debt.

## Homeward Collection Efforts

34.   After this debt was transfer and/or assigned to Homeward, the Plaintiff began receiving collection phone calls and demands for payment on this discharged debt.

35.   The Plaintiff received her first collection letter via certified mail dated July 5, 2012, from Homeward demanding payment of $5,726.37.

36.   The Plaintiff received her second collection letter via certified mail dated September 10, 2012, from Homeward demanding payment of $6,834.05.

37.   On October 18, 2012, Plaintiff called Homeward in response to the collection letters demanding payment. Plaintiff and a Homeward representative discussed the payment status between Homeward and Greg Fields. Homeward representative stated that the last payment received from Greg Fields was on September 29, 2012, for $1,101.00, which was applied towards the April 2012 payment.

38.   The Plaintiff received a collection letter via certified mail dated October 22, 2012, from Homeward demanding payment of $6,852.88.

39.   On October 24, 2012, Plaintiff called Homeward to discuss the collection letters demanding payment because the Plaintiff was so distraught over the demand letters. A Homeward representative told Plaintiff that six payments were due totaling $5, 913.56 in order to bring the loan current.

40.   The Plaintiff received a collection letter via regular mail dated November 28, 2012, from Homeward demanding payment of $6,882.63.

41.   The Plaintiff received a collection letter via certified mail dated November 29, 2012, from Homeward demanding payment of $6,882.63.

42.   On December 6, 2012, the Plaintiff contacted Homeward after receiving the November 2012 collection letters. The Plaintiff spoke with a representative at Homeward named Cecil (ID#ce2). The Plaintiff was again very distraught over all of these demands for payment when Cecil and the Plaintiff began discussing the matter. The Plaintiff mentioned to Cecil that she had filed a previous Chapter 7 Bankruptcy. Cecil informed the Plaintiff that she was not responsible for the debt and that he had her bankruptcy papers in his hands. The Plaintiff began to cry and was very thankful that Cecil was the first person who taken the time to try to help her over the phone. Cecil gave the Plaintiff the idea of faxing a dispute letter to Homeward.

43.   On December 7, 2012, the Plaintiff faxed Homeward a letter requesting that the property go into foreclosure. Additionally, the letter requested that Homeward send

your Plaintiff a copy of discharge papers from bankruptcy and that the Fields no longer be on the account.

44. The Plaintiff received a letter dated December 10, 2012, wherein Homeward acknowledged receipt of the Plaintiff's letter dated December 7, 2012.

45. The Plaintiff received a demand for payment via regular mail from Homeward dated January 7, 2013, seeking to collect $6,867.75.

46. The Plaintiff received a collection letter via certified mail dated January 7, 2013, from Homeward demanding payment of $6,887.75.

47. The Plaintiff received a letter from Homeward dated January 18, 2013, acknowledging receipt of correspondence from the plaintiff. The letter further states that the account was being forwarded for research and resolution.

48. The Plaintiff received a letter from Homeward dated January 23, 2013, which states in pertinent part, "Please be advised, we are in receipt of your correspondence dated December 7, 2012. We were notified of the Chapter 13 Bankruptcy filing on October 23, 2008, case number 08-05292. On September 2, 2009, the Bankruptcy case was converted to a Chapter 7 and discharged on December 3, 2009. Should you need any additional documentation regarding the bankruptcy, please contact your bankruptcy attorney. As your obligation under the terms of the Note was discharged through bankruptcy, you are under no obligation to Homeward to make any further loan payments. Homeward still possesses a lien

against the property in the amount of the discharge debt under the terms of the Security Interest (Mortgage or Deed of Trust)."

49.   The Plaintiff received a collection letter from Homeward dated February 15, 2013, seeking to collect $6,856.87.

50.   The Plaintiff received a letter dated February 22, 2013, from Homeward providing notice that the loan was being transferred to Ocwen for servicing.

51.   On or about February 28, 2013, the Plaintiff contacted Homeward to gather information on why the debt was being transferred to Ocwen for servicing. The Plaintiff spoke with Zora who transferred the Plaintiff to Travis. Travis spoke to the Plaintiff about loan modification options. The Plaintiff informed Travis that she was not interested in a loan modification. Travis informed the Plaintiff that she should contact Ocwen.

## Ocwen Collection Efforts

52.   On or about March 5, 2013, the Plaintiff contacted Ocwen regarding the debt. The Plaintiff notified a representative of Ocwen named Mark (ID# MMB) of her bankruptcy discharge. The Ocwen representative confirmed with Plaintiff that a reaffirmation agreement was not signed.

53.   The Plaintiff received an account statement dated March 12, 2013, from Ocwen demanding immediate payment of the past-due amount of $6,272.16.

54.    The Plaintiff received additional correspondence from Ocwen dated March 12, 2013, stating the total amount due for this debt is $147,035.99.

55.    The Plaintiff received additional correspondence from Ocwen dated March 12, 2013, listing alternatives to foreclosure. The Plaintiff did not request this information.

56.    The Plaintiff received correspondence from Ocwen dated March 20, 2013, regarding the Making Home Affordable Program ("HAMP"). The Plaintiff did not request this information.

57.    The Plaintiff received correspondence from Ocwen dated March 28, 2013, notifying her that a relationship manager named Deepa Abraham was assigned to serve as her relationship manager through the process of identifying solutions for her loan.

58.    Sometime after the March 28, 2013, correspondence from Ocwen, the Plaintiff received a phone call from Deepa Abraham. Deepa informed the Plaintiff that he was the assigned person on her case and that he would be the only one calling your Plaintiff. Further, Deepa informed your Plaintiff that the debt was transferred to Ocwen for servicing. Deepa began discussing the status of the mortgage due to the delinquency and the amount past-due. The Plaintiff informed Deepa that she did not have any money and she did not reside in the property. Deepa asked the

Plaintiff what she was going to do about the debt. The Plaintiff stated that she had already spoken to Homeward about this debt.

59. The Plaintiff received an account statement dated April 4, 2013, from Ocwen demanding immediate payment of the past-due amount of $5,226.80, and a total amount due of $7,828.19.

60. On or about April 12, 2013, your Plaintiff called Ocwen regarding the April correspondence. During the phone call, a representative from Ocwen asked the Plaintiff why she was not paying her bills. The Ocwen representative stated the mortgage was over 90 days late. The Plaintiff responded and stated that she did not have any money and was relying on family to help pay her bills. The representative scheduled the Plaintiff to a conference call on April 30, 2013.

61. The Plaintiff received correspondence from Ocwen dated April 19, 2013, regarding instructions on how to apply for a HAMP modification.

62. On or about April 19, 2013, Plaintiff contacted Ocwen in response to the April 19, 2013, correspondence. An Ocwen representative spoke to the Plaintiff about different options such as a deed in lieu of foreclosure, a loan modification and/or a short sale.

63. The Plaintiff received additional correspondence from Ocwen regarding the HAMP program dated April 25, 2013, April 27, 2013, and April 30, 2013,

thanking her for submitting the application for a loan modification. The Plaintiff has not submitted an application for a loan modification to Ocwen.

64.    On or about April 30, 2013, a representative from Ocwen named Vasheeta contacted the Plaintiff regarding the collection of this debt.

65.    On May 10, 2013, the Plaintiff sent a fax to Ocwen stating that she wanted to surrender the property.

66.    On May 21, 2013, the Plaintiff received correspondence from Ocwen regarding a deed in lieu of foreclosure application review.

67.    In May and in June 2013, the Plaintiff received additional correspondence from Ocwen denying the deed in lieu application.

68.    The Plaintiff received correspondence from Ocwen dated July 9, 2013, again thanking her for her loan modification application and requesting additional information. Plaintiff did not request a loan modification from Ocwen.


## NEW CHAPTER 13 BANKRUPTCY CASE

69.    On September 26, 2013, the Plaintiff filed for relief under Chapter 13 of the Bankruptcy Code (Case # 13-04304-TBB).

70.    On December 12, 2013, Ocwen filed an objection to the Plaintiff's Chapter 13 plan. Ocwen alleged that the Plaintiff failed to adequately provide for the proper amount of prepetition arrears owed by Plaintiff to Ocwen Loan Servicing

LLC/Deutsche Bank National Trust Company. Contrary to what is stated in the Plaintiff's proposed plan, the actual amount of prepetition arrears owed to Ocwen Loan Servicing LLC/Deutsche Bank National Trust Company is $13,110.16.

## SUMMARY

71.   All of the above-described collection communications made to Plaintiff by each individual Defendant and other collection employees employed by these Defendants were made in violation of the FDCPA.

72.   Defendant, Homeward, has violated numerous sections of the FDCPA, including, but not limited to: 1692d, 1692e, 1692e(2), 1692e(10), 1692f, 1692f(1) and 1692g(b).

73.   Defendant, Ocwen, has violated numerous sections of the FDCPA, including, but not limited to: 1692d, 1692d(5), 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1).

74.   Defendant, Homeward, started a campaign of deliberate intent to harass and oppress Plaintiff to force Plaintiff to pay Defendant.

75.   Defendant, Ocwen, started a campaign of deliberate intent to harass and oppress Plaintiff to force Plaintiff to pay Defendant.

76.   Each Defendant had knowledge of the Plaintiff's bankruptcy discharge.

77.   Each defendant failed to maintain adequate policies and procedures which would prevent this type of conduct.

78.   Had each Defendant undertaken even an incompetent investigation, and certainly if each Defendant had done a reasonable investigation as any honorable debt collector would have done, each Defendant would have concluded that Plaintiff does not owe any money on this debt.

79.   Instead of doing what is reasonable and what any honorable debt collector would do, however, each Defendant has instead planned, executed, and carried out a collection scheme, plan, and campaign of harassment against Plaintiff.

80.   Defendant, Homeward, has misrepresented the character, nature, and amount of the debt, as no debt is owed.

81.   Defendant, Ocwen, has misrepresented the character, nature, and amount of the debt, as no debt is owed.

82.   Each Defendant has misrepresented not only the existence of the debt, but also the consequences that it will impose upon the Plaintiff if the Plaintiff does not give in to the extortion demands of each Defendant.

83.   The above-detailed conduct by each Defendant of harassing Plaintiff in an effort to collect this debt was also an invasion of Plaintiff's privacy and resulted in actual damages to the Plaintiff.

84.   The above-detailed conduct by each Defendant reflects its knowledge and appreciation for the harm that would naturally and likely happen to Plaintiff and with full knowledge thereof each Defendant willfully, maliciously, recklessly,

and/or negligently undertook its actions and it was successful in causing the harm to the Plaintiff that each Defendant wanted to cause.

85. This abusive collection by each Defendant and its agents caused Plaintiff stress and anguish.

86. Each of the Defendant's attempts to collect this debt from Plaintiff and their refusal to stop violating the law was an invasion of Plaintiff's privacy and Plaintiff's right to be left alone.

87. Plaintiff has suffered actual damages as a result of these illegal collection communications by each Defendant in the form of anger, anxiety, emotional distress, fear, frustration, damage to reputation, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy, which was due to the illegal conduct of each and every Defendant.

88. The only way that abusive debt collectors like each Defendant will stop their abusive practices towards consumers is by a jury verdict fully compensating Plaintiff for the harm done to Plaintiff and by a significant punitive damage award.

89. A significant punitive damage award will get the attention of each Defendant and other abusive collectors and to gain an unfair competitive advantage over honorable, law abiding debt collectors so that they will realize that it no longer makes economic sense to abuse consumers.

90.   A full compensatory damage award and a full punitive damage award will accomplish the goals of Congress in passing the FDCPA - stop abusive collection practices against consumers and prevent dishonorable debt collectors from having an unfair advantage over collectors that operate within the boundaries of the law.

### *Respondeat Superior Liability*

91.   The acts and omissions of each individual collector, and the other debt collectors employed as agents by these Defendants who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant, Homeward, and/or Defendant, Ocwen.

92.   The acts and omissions by these individual employees were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by these Defendants in collecting consumer debts.

93.   By committing these acts and omissions against Plaintiff, these individual collectors were motivated to benefit their principal, Defendant, Homeward, and/or Defendant, Ocwen.

94.   Each Defendant is therefore liable to Plaintiff through the Doctrine of Respondent Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, including but not

limited to violations of the FDCPA and Alabama law, in their attempts to collect this debt from Plaintiff.

## **TRIAL BY JURY**

95.   Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## **CAUSES OF ACTION**

## **COUNT I.**
## **VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
## **15 U.S.C. § 1692 et seq.**

96.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

97.   The foregoing acts and omissions of Defendant, Homeward, has violated numerous sections of the FDCPA, including, but not limited to: 1692d, 1692e, 1692e(2), 1692e(10), 1692f, 1692f(1) and 1692g(b).

98.   The foregoing acts and omissions of Defendant, Ocwen, has violated numerous sections of the FDCPA, including, but not limited to: 1692d, 1692d(5), 1692e, 1692e(2), 1692e(10), 1692f, and 1692f(1).

99.   As a result of each Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); (2) actual and

compensatory damages; and, (3) reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each Defendant herein.

## COUNT II. INVASION OF PRIVACY

97. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

98. Alabama law recognizes Plaintiff's right to be free from invasions of privacy and each Defendant violated Alabama state law as described in this Complaint.

99. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:   **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.** 15 U.S.C. § 1692(a) (emphasis added).

100. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes: It is the policy of Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

101.   Defendants and/or their agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and/or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

102.   Defendants and their agents intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

103.   Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

104.   The conduct of these Defendants and their agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by these Defendants which occurred in a way that would be highly offensive to a reasonable person in that position.

105.   The conduct of these Defendants and their agents went beyond the bounds of reasonableness in the collection of the alleged debt for all of the reasons asserted in this Complaint and based upon the evidence which will be presented at trial.

106.   As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from each and every Defendant.

107.   All acts of each of these Defendants and their agents and/or employees were committed with malice, intent, wantonness, and/or recklessness and as such each and every Defendant is subject to punitive damages.

### COUNT III. NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING, TRAINING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

108.   Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

109.   Defendants negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and are thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

110.   Had Defendants hired competent debt collectors, the violations described in this Complaint would not have occurred.

111.   Had Defendants properly trained and/or supervised the debt collectors, the violations described in this Complaint would not have occurred. The Defendants carried out its hiring, supervision and training activities in a negligent manner and also in a reckless, malicious, and/or intentional manner.

112.   Defendants knew that the actions it was taking against the Plaintiff would likely, and certainly, cause the exact type of injuries and damages that Plaintiff suffered at the hands of each and every Defendant.

## COUNT IV NEGLIGENT, WANTON, AND
## INTENTIONAL CONDUCT

113.   All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

114.   Defendants owe a duty to anyone it comes in contact with to act reasonably so as to not unreasonably cause harm.

115.   Defendants owe a duty to consumers against whom it is collecting to act reasonably.

116.   All of the actions described in this Complaint demonstrate that each and every Defendant did not act reasonably towards the Plaintiff.

117.   Each Defendant, by its described conduct, breached its duty to act reasonably towards Plaintiff.

118.   Each Defendant proximately caused injuries and damages to Plaintiff which were of the precise nature that each and every Defendant anticipated causing when it breached its duty to act reasonably.

119.   Each Defendant knew, or should have known, that its conduct was likely to lead to the Plaintiff's injuries yet it acted despite this knowledge.

120.   Each Defendant acted with full knowledge and with the design and intent to cause harm to Plaintiff.

121. Each Defendant was successful in its design, intent, and plan to cause harm to Plaintiff and this is the corporate policy of each of the Defendants when dealing with consumers who do not pay debts that each of the Defendants allege is owed.

122. Each Defendant acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint.

123. Each Defendant violated all of the duties they had and such violations were made intentionally, willfully, recklessly, maliciously, wantonly, and/or negligently.

124. It was foreseeable, and each Defendant did in fact foresee that their actions would lead and did lead to the exact type of harm suffered by Plaintiff.

125. Each Defendant acted with negligence, malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint. Each Defendant invaded the privacy of Plaintiff as set forth in Alabama law.

126. Such negligence, malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this Complaint.

127. As a result of this conduct, action, and inaction of each Defendant, Plaintiff has suffered damage as set forth in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:**COUNT I.  VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692 et seq.**

· for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant;

· for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each and every Defendant;

· for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. §  1692k(a)(3) against each and every Defendant; and

· for such other and further relief as may be just and proper.

## COUNT II.  INVASION OF PRIVACY

· for an award of actual damages from each Defendant for all damages including emotional distress suffered as a result of the intentional, reckless, and/or negligent state law violations in an amount to be determined at trial for Plaintiff;

· punitive damages; and

· for such other and further relief as may be just and proper.

## COUNT III.  NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING, TRAINING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

- for an award of actual damages from each Defendant for all damages including emotional distress suffered as a result of the intentional, reckless, and/or negligent violations of state law in an amount to be determined at trial for Plaintiff;

- punitive damages; and

- for such other and further relief as may be just and proper.

## COUNT IV.  NEGLIGENT, WANTON, AND/OR INTENTIONAL CONDUCT

- for an award of actual damages from each Defendant for all damages including emotional distress suffered as a result of the intentional, reckless, and/or negligent violations of state law in an amount to be determined at trial for Plaintiff;

- punitive damages; and

- for such other and further relief as may be just and proper.

Respectfully submitted,

Dated: 12-31-2013

/s/ S. Scott Allums
S. Scott Allums (ASB-5967-N62A)
S. Scott Allums, PC
506 North 18th Street
Bessemer, Alabama 35020
Telephone:  (205) 426-7080
scott@allumslaw.com

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF ALABAMA )
)
COUNTY OF JEFFERSON )

Plaintiff, Cynthia Sharpe, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

_Cynthia Sharpe_
Plaintiff

Subscribed and sworn to before me
this 31 day of December, 2013.

_____
Notary Public

MY COMMISSION EXPIRES DECEMBER 4, 2016